UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA )
)
v. ) No. 2:13-CR-00046-8-JRG
)
RANDY J. DAVIS )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Randy J. Davis' Pro Se Motion for

Compassionate Release under 28 U.S.C. § 3582(c)(1)(A) [Doc. 735], the United States'

Response in Opposition [Doc. 737], and the Federal Defender Services of Eastern Tennessee's

Reply [Doc. 742]. For the reasons herein, the Court will deny Mr. Davis' motion.

## I. BACKGROUND

In 2014, Mr. Davis entered into a plea agreement with the United States under Federal

Rule of Criminal Procedure 11(c)(1)(C). [Plea Agreement, Doc. 253]. He pleaded guilty to a

conspiracy to manufacture five grams or more of methamphetamine, in violation of 21 U.S.C.

§§ 846 and 841(b)(1)(B). [*Id.* at 1; Minute Entry, Doc. 277]. At sentencing, Mr. Davis was a

career offender under USSG § 4B1.1(b), [PSR, Doc. 400, ¶¶ 27, 50], with a total offense level

of 34 and a criminal history category of VI, [Statement of Reasons at 1 (on file with the Court)].

His guidelines range was 262 to 327 months' imprisonment. [*Id.* at 1]. Accepting the parties'

Rule 11(c)(1)(C) agreement, [*id.* at 2], the Court sentenced him to a below-guidelines sentence

of 228 months' imprisonment, [J., Doc. 483, at 2]. He is serving his term of imprisonment at

FCI Butner Medium II and is scheduled for release in February 2029.

Acting pro se, Mr. Davis, who is forty-nine years old, now moves the Court for

compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of the COVID-19 pandemic,

claiming that he suffers from underlying medical conditions that place him at a heightened risk of severe illness from COVID-19. [Def.'s Mot. at 4]. Specifically, he states he has hepatitis C, was a heavy drug user for many years, and was a heavy smoker for many years. [*Id.* at 2, 4]. In addition, Mr. Davis claims that his mother, whom he states is his minor son's only caregiver, is in poor health and no longer able to care for his son. [*Id.* at 5–6]. According to Mr. Davis, he is now the only available caregiver for his son and his need to care for his son and his mother constitutes an extraordinary and compelling reason for his release. [*Id.*; Def.'s Reply at 3]. Also, Mr. Davis maintains that 18 U.S.C. § 3553(a)'s factors favor his release because he "has done remarkably well" during his incarceration and demonstrated "exemplary rehabilitation." [Def.'s Mot. at 7, 8].

In a reply brief, the Federal Defender Services of Eastern Tennessee ("FDS") reiterates Mr. Davis' arguments, noting that it "believes Mr. Davis has submitted a well-presented motion ripe for consideration," [Def.'s Reply Br. at 1]—an assertion with which the Court does not disagree. FDS, however, also raises a new argument on Mr. Davis' behalf: it contends that Mr. Davis, under the Sixth Circuit's decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), would no longer be a career offender under § 4B1.1(b). [*Id.* at 3–4]. If Mr. Davis were to appear before the Court today for sentencing, FDS says, his "non-career offender guideline range" would be "a total offense level of 27, Criminal History Category VI, and an advisory guideline range of 130 to 162 months, instead of the 262 to 327 months." [*Id.* at 3]. FDS argues that Mr. Davis' "post-*Havis*" guidelines range is "an extraordinary and compelling reason to allow Mr. Davis to go home to his son and mother." [*Id.* at 4]. FDS also highlights his good behavior during his term of imprisonment, urging the Court "to seek Mr. Davis' inmate status report and the lack of disciplinary actions." [*Id.*].

The United States does not dispute that Mr. Davis has a commendable record while incarcerated, but it does, nevertheless, argue that § 3553(a)'s factors weigh against his release. [United States' Resp. at 8–12]. The United States also argues that Mr. Davis has not identified an extraordinary and compelling reason for his release under § 3582(c)(1)(A). [*Id.*]. Having carefully considered the parties' arguments, the Court is now prepared to rule on Mr. Davis' motion.

## II.  ANALYSIS

This Court begins with a word of clarity. FDS insists that Mr. Davis' motion is not a "typical" request for compassionate release and "should not be discarded out of hand without giving due consideration." [Def.'s Reply at 4]. The Court is not in the habit of rejecting *any* defendant's request for compassionate release out of hand or without appropriate consideration. Although the Court might well be within its rights to enter a form order when ruling on a defendant's motion for compassionate release, it does not do so. *See United States v. Navarro*, 986 F.3d 668, 669–73 (6th Cir. 2021) (affirming the district court's denial of a motion for compassionate release even though the district court's order consisted of only one sentence); *cf. United States v. Boulding*,  960 F.3d 774, 783 (6th Cir. 2020) ("[W]e held that a district court's completion of an AO Form Order was an adequate statement of reasons for the resentencing decision[.]" (citation omitted)).

Instead, as counsel is surely aware, the Court has regularly entered lengthy opinions in which it has taken considerable care to explain to *all* defendants why they do not qualify for compassionate release under § 3553(a)'s factors—even when, upfront, they are without an extraordinary and compelling reason for compassionate release. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (stating that "district courts may deny compassionate-release

3

motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" (citations omitted)). The Court will do the same for Mr. Davis, but the simple fact is that compassionate release presents defendants with a high bar to hurdle, and that high bar is too lofty for the vast majority of them, including Mr. Davis. *See United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (stating that "compassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)).

### A. The First Requirement: Extraordinary and Compelling Circumstances

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts her administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

4

unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The United States concedes that "[t]he Court has authority to consider the motion because Davis submitted a request to the warden of his facility over 30 days ago, thereby satisfying the exhaustion requirement." [United States' Resp. at 1].

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

5

1. *Mr. Davis' Underlying Medical Conditions*

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> > (A) Medical Condition of the Defendant.—
> >
> > > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a

6

specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling

7

circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

    The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file

their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *see also id.* at 1111 (stating that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *see also United States v. Sherwood*, 986 F.3d 951, 953–54 (6th Cir. 2021) (stating that § 1B1.13 "no longer provides an *independent* basis for denying compassionate release" motions and remanding the case because the district court "relied on § 1B1.13(2) as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors (emphasis added) (citation omitted)); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (concluding that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)); *but see United States v. Mullins*, No. 20-5848, at *2–3 (6th Cir. Jan. 8, 2021) (PACER) (vacating this Court's order, which the Court had entered prior to the Sixth Circuit's

decision in *Jones*, and remanding the case so that the Court could "recognize its discretion to find extraordinary and compelling reasons other than those listed [in § 1B1.13]").

Even so, the Court, in its discretion, will abstain from an analysis under Application Note 1(A)–(C)—outmoded as it is—and instead turn to the Center of Disease Control's guidelines in considering whether Mr. Lowe's underlying condition, against the backdrop of the COVID-19 pandemic, constitutes an extraordinary and compelling reason for his release. *See, e.g.*, *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 756–57 (E.D. Mich.), *vacated on other grounds*, 815 F. App'x 978 (6th Cir. 2020); *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1050 (E.D. Mich. 2020); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *cf. Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating that "courts normally should defer to the reasonable medical judgments of public health officials" (footnote and quotation omitted)). According to the CDC's guidelines, "[p]eople of any age with the following conditions *are at increased risk* of severe illness from" COVID-19:

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Down syndrome
- Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but < 40 kg/m$^2$)
- Severe Obesity (BMI ≥ 40 kg/m$^2$)
- Pregnancy
- Sickle cell disease
- Smoking
- Type 2 diabetes mellitus

Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 22, 2021).

Mr. Davis' underlying condition—hepatitis C—matches none of those that the CDC identifies as likely to put an individual at a heightened risk of severe illness from COVID-19, and neither does his apprehension about his previous drug abuse. The Court sympathizes with Mr. Davis' concerns, but it is simply unwilling to order the release of prisoners whose underlying conditions, based on the CDC's guidelines, do not place them at a heightened risk of severe illness from COVID-19; otherwise, the Court, to be evenhanded, would face the untenable situation of having to release all prisoners with any underlying condition. *See United States v. Wright*, No. CR-16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." (footnote omitted))*; see also Dusenbery*, 2019 WL 6111418 at *2 (stating that "compassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)).

While the Court would be much more inclined to find that Mr. Davis' alleged history of heavy smoking constitutes, under the CDC's guidelines, an extraordinary and compelling reason for his release, Mr. Davis' medical records contain no mention of a history of smoking or lung disease from a history of smoking. Because the Court is without medical documentation to corroborate that Mr. Davis was a smoker, it has no basis to conclude that an extraordinary and compelling reason warrants his release under § 3582(c)(1)(A). *See Elias*, 984 F.3d at 520–21 ("[W]e note that [the defendant] did not provide any records in her motion to support that she has hypertension. The district court could have denied [her] motion for compassionate release on this basis." (citations omitted)); *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (stating that the defendant "falls woefully short of establishing

11

a right to a compassionate release" because he "offers no proof, such as medical records, that would substantiate this claim" (footnote and citations omitted)).

### 2. *Mr. Davis' Familial Circumstances*

After the Sixth Circuit's decision in *Jones*, district courts in this circuit have capably fashioned their own approaches to defining "extraordinary and compelling circumstances" without consulting § 1B1.13. *See, e.g.*, *United States v. Howell*, No. 1:19-cr-242, 2020 WL 6876124, at *1 (N.D. Ohio, Nov. 23, 2020) (considering whether "(1) the defendant is at high risk of having grave complications should he contract COVID-19" and "(2) the prison where the defendant resides has a severe COVID-19 outbreak" (citations omitted)); *United States v. Black*, No. 17-20656, 2020 WL 7021696, at *3 (E.D. Mich. Nov. 30, 2020) ("Post-*Jones*, these remain appropriate considerations.").[1] But some district courts continue to lean on § 1B1.13(1)(C) when defining "extraordinary and compelling circumstances" in the context of familial hardship. *See, e.g.*, *United States v. Taylor*, No. 19-20056, 2021 WL 21760, at *2 (E.D. Mich. Jan. 24, 2021) ("Although the Sixth Circuit held that U.S.S.G 1B1.13 does not apply to compassionate release motions filed by imprisoned individuals, it remains a measure by which district courts can evaluate what constitutes extraordinary and compelling circumstances." (citation omitted)); *United States v. Rice*, No. 7:15-019-DCR, 2021 WL 141690, at *2–3 (E.D. Ky. Jan. 14, 2021) ("While the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a helpful starting point for deciding whether extraordinary and compelling reasons exist.").

---

[1] This Court has elected to consider COVID-19's impact on a prison as part of its analysis under § 3553(a) because the Sixth Circuit has recognized that it is "relevant to § 3553(a)(2)(D)." *Jones*, 980 F.3d at 1115.

In *Jones*' wake, a district court's reliance on § 1B1.13(1)(C) appears to be permissible so long as it does not rely on it exclusively—or, in other words, so long as it does not rely on § 1B1.13(1)(C) at the exclusion of an analysis under § 3553(a)'s factors. *See Sherwood*, 986 F.3d at 953–54 (stating that § 1B1.13 "no longer provides an *independent* basis for denying compassionate release" and remanding the case because the district court "relied on § 1B1.13(2) as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors (emphasis added) (citation omitted)). In this case, both the United States and FDS invite the Court to consider § 1B1.13 in its analysis. [United States' Resp. at 7 (stating that "§ 1B1.13 provides a useful 'working definition' that can 'guide discretion without being conclusive'" (quotation omitted)); Def.'s Reply at 2 ("Under Application Note 1(C), Family Circumstances can meet this standard when there is a death or incapacitation of the caregiver of the defendant's minor child.")].

Again, § 1B1.13(1)(C)(i) provides that the "incapacitation of the caregiver of the defendant's minor child" is an extraordinary or compelling circumstance for the defendant's release.[2] Under § 1B1.13(1)(C)(i), Mr. Davis must establish, with evidence, that (1) his son's caregiver is incapacitated and that (2) he would be the only available caregiver for his son. *See United States v. Cole*, No. 18-20237, 2021 WL 194194, at *2 (E.D. Mich. Jan. 20, 2021) ("[D]istrict courts have routinely denied motions for compassionate release when the defendants cannot show that they would be the only available caregiver of a minor child, even if their

---

[2] The BOP defines "incapacitation" to mean that a person has (1) "[s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or (2) "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair." BOP, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205g* 10 (2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdfBOP. Merriam Webster defines "incapacitate" as "to deprive of capacity or natural power."

incarceration imposes substantial burdens on a spouse or co-parent to a minor child." (citations omitted)); *United States v. Corley*, No. 3:13-cr-00097-9, 2021 WL 119640, at *1 (M.D. Tenn. Jan. 13, 2021) ("There is simply no factual predicate for the Court to find [the defendant's] family circumstances constitute extraordinary and compelling grounds for compassionate release, which typically requires a finding that the Defendant is the only available caregiver." (citing *United States v. Lisi,* 440 F. Supp. 3d, 246, 252 (S.D.N.Y. 2020))); *United States v. Marshall*, No. 3:16-CR-00004-JHM, 2020 WL 114437, at *3 (W.D. Ky. Jan. 9, 2020) ("[The defendant] fails to provide evidence that [his grandfather] is incapacitated, i.e. that he cannot carry on any self-care. Additionally, the evidence does not reflect that [the defendant] is the only available caregiver for [his grandfather]." (footnote and citations omitted)).

Mr. Davis does not meet either requirement. According to Mr. Davis, his seventy-four-year-old mother, Ms. Myrtle Baker—who, again, is his son's caretaker—has tumors in her lungs and suffers from COPD, which requires her to use oxygen. [Def.'s Mot. at 6]. Mr. Davis also states that Ms. Baker has degenerative bone disease in her back as well as hypertension. [*Id.*]. Ms. Baker has written a letter to the Court, stating that she suffers from these conditions. [Baker Letter, Doc. 752, at 16]. But the record contains no medical documentation from which the Court can substantiate that Ms. Baker does indeed suffer from these conditions—much less that they have rendered her incapacitated.

She has provided the Court with a copy of the Social Security Administration's determination that she is entitled to disability benefits, but this determination is of little consequence because the Social Security Administration issued it in 2003, [SSA Determination, Doc. 752, at 15], and Ms. Baker, despite her disability, has cared for Mr. Davis' son for many years since then, *see* [Birth Certificate, Doc. 752, at 12 (stating that Mr. Davis' son was born

14

in 2005)]. Ms. Baker has also provided the Court with a copy of a piece of paper from "Pain Medicine Associates," which is dated December 1, 2020, and states that she has a "chronic condition" and "is unable to render full time child care." [Pain Med. Slip, Doc. 752, at 14]. But this paper does not specify the chronic condition that she suffers from or state whether her pain medication is successful in abating the symptoms of her chronic condition, and most importantly, it does not state whether her inability to administer child care is temporary or permanent. [*Id.*].

In an effort to corroborate Mr. Davis' characterization of his mother's health, the Court could conceivably ask Ms. Baker to submit her medical records to the Court and reserve ruling on Mr. Davis' motion in the meantime. But FDS informs the Court that "Mr. Davis provided the court with every document that counsel would have provided to the court upon his behalf, and Mr. Davis has asked that a ruling on his motion not be delayed by counsel seeking additional documentation." [Def.'s Reply at 1]. As the record stands, however, the Court, for the reasons it has mentioned, does not consider it to be sufficient to establish that Ms. Baker is incapacitated and unable to care for Mr. Davis' son.

Even if Mr. Davis had shown that his mother is incapacitated, the Court would be unconvinced, as the record stands, that Mr. Davis is his son's only available caregiver. Although Mr. Davis has three half-sisters, Ms. Baker asserts they are unable to care for Mr. Davis' son because one of them is "disabled," another has "severe degenerative disc disease" and "mental issues," and the third is incarcerated in North Carolina. [Second Baker Letter, Doc. 744-1, at 1]. But again, these assertions lack evidentiary support, and although Ms. Baker states that "[a]ll these things can be verified, if requested," [*id.*], Mr. Davis, in the plainest of terms, is unwilling to consent to the additional supplementation of the record, [Def.'s Reply at 1].

Besides, the Court is unclear as to why Mr. Davis' son's biological mother is unable to play any role in his care. The record contains various references to the biological mother, April Denice Elliott, in certain documents, but Mr. Davis provides the Court with little detail about her. He states only that, as far as he knows, she has neither seen nor spoken to their son in over seven years. [Def.'s Letter, Doc. 748-1, at 15]. Ms. Baker states something similar, claiming that Ms. Elliott has had no contact with her son for multiple years. [Baker Letter at 16]. The Court cannot help but observe, though, that Ms. Elliott's last-known address is in East Tennessee, [Certificate of Serv., Doc. 752, at 10], which is also where Mr. Davis' son resides, [Def.'s Mot. at 8–9]. Mr. Davis does not claim that Ms. Elliott is deceased, unstable, or in any way unfit to care for her son, leaving the Court to presume only that Mr. Davis and Ms. Elliott are estranged due to the passage of time. Under the circumstances, the Court has to wonder whether Ms. Elliott, if Mr. Davis were to make an appeal to her, could begin to serve a more meaningful role in her son's life. Because Mr. Davis has not confirmed that Ms. Elliott is unwilling to assume this role, the Court cannot conclude that Mr. Davis is his son's only available caregiver, nor can the Court conclude that Mr. Davis has identified an extraordinary and compelling reason for his release.

3. *United States v. Havis*

USSG § 4B1.1(b) contains a career-offender enhancement that increases a defendant's offense level under the Sentencing Guidelines and automatically results in a criminal history category of VI. USSG § 4B1.1(b). Under § 4B1.1(b), a defendant qualifies as a career offender when he "has more than one prior conviction for either crimes of violence or controlled-substance offenses." *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020) (citing USSG § 4B1.1). Section 4B1.2(b) defines a "controlled-substance offense[]" as "an offense under federal or state law . . . that prohibits the manufacture, import, export, distribution, or dispensing

of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." USSG 4B1.2(b).

In Mr. Davis' case, he had prior convictions in Tennessee for selling amphetamine, a scheduled II controlled substance, and for attempting to manufacture methamphetamine, a schedule II controlled substance, each in violation of Tennessee Code Annotated § 39-17-417. [PSR ¶¶ 40, 42; State Court J., Doc. 143-1, at 1; State Court J 2, Doc. 143-2, at 1]. The Court therefore applied, without objection from either party, § 4B1.1(b)'s career-offender enhancement to Mr. Davis at sentencing. [Notices of No Objs., Docs., 422 & 426; Statement of Reasons at 1 (adopting the PSR without change)]. Mr. Davis now invokes *Havis* to request relief from his career-offender status and, ultimately, relief from his custodial sentence.

In *Havis*, the district court deemed the defendant a career offender under 4B1.1(b) at sentencing, and one of his two prior convictions was under Tennessee Code Annotated § 39-17-417(a)(2)–(3) for selling and/or delivering cocaine. *Havis*, 927 F.3d at 384. Section 39-17-417(a) states that "[i]t is an offense for a defendant to knowingly: (1) Manufacture a controlled substance; (2) Deliver a controlled substance; [or] (3) Sell a controlled substance[.]" But the statute defines "delivery" of a controlled substance as the "actual, constructive, *or attempted* transfer from one person to another." Tenn. Code Ann. § 39-17-402(6) (emphasis added). On appeal, the defendant challenged his prior conviction, and his designation as a career offender under § 4B1.1(b), because § 4B1.2(b)'s textual definition of a controlled-substance offense was not inclusive of attempted crimes—only § 4B1.2(b)'s commentary was. *Havis*, 927 F.3d at 384.

In deciding "which construction of § 4B1.2(b) prevails," the Sixth Circuit applied a framework known as the "categorical approach," *id.* at 385, which courts use to determine whether a defendant's prior conviction counts as a predicate offense. If the relevant statute—

17

in this case, Tennessee Code Annotated § 39-17-417—has the same definitions or elements as the guidelines, then the prior conviction can serve as a predicate offense. *Descamps v. United States*, 570 U.S. 254, 260–61 (2013); *Stinson v. United States*, 508 U.S. 36, 39–41 (1993). Or, put a little differently, "[i]f the least culpable conduct criminalized by a statute falls outside the definition in § 4B1.2, then a conviction under that statute does not qualify as a controlled-substance offense for purposes of the career-offender enhancement." *United States v. Thomas*, 969 F.3d 583, 584 (6th Cir. 2020) (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). The Sixth Circuit concluded that § 39-17-417(a)(2) did not satisfy the categorical approach because it defined the delivery of narcotics as inclusive of attempt—the least culpable conduct under the statute—but § 4B1.2(b)'s main text did not. *Havis*, 927 F.3d at 386–87.

The defendant's prior conviction in *Havis* was for the delivery of a controlled substance under § 39-17-417(a)(2) whereas Mr. Davis' prior conviction, according to the state court's judgment, is for the attempted manufacture of a controlled substance under § 39-17-417. [State Court J 2 at 1]. Again, § 39-17-417 defines the term "delivery" as "the attempted transfer from one person to another." Tenn. Code Ann. § 39-17-417(6). But § 39-17-417 does not define the term "manufacture" the same way—that is, as an offense involving attempt.[3] Rather, Tennessee Code Annotated § 39-12-101 *separately* provides punishment for attempt crimes, and § 39-12-101(a) and § 39-17-417(a)(1) *together* provide punishment for the attempt to manufacture a controlled substance. *State v. Best*, No. E2007–00296–CCA–R3–CD, 2008 WL 4367529, at *16,

---

[3] "'Manufacture' means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that "manufacture" does not include the preparation or compounding of a controlled substance by an individual for the individual's own use or the preparation, compounding, packaging, or labeling of a controlled substance by: (A) A practitioner as an incident to administering or dispensing a controlled substance in the course of professional practice; or (B) A practitioner, or an authorized agent under the practitioner's supervision, for the purpose of, or as an incident to, research, teaching or chemical analysis and not for sale[.]" Tenn. Code Ann. § 39-17-402(15).

21 (Tenn. Ct. Crim. App. Sept. 25, 2008); *cf. United States v. Havis*, 929 F.3d 317, 320 (6th Cir. 2019) (Sutton, J., concurring) ("Someone who attempts to *transfer* drugs in Tennessee has committed the completed offense of delivery under § 39-17-417(a)(2), and someone who attempts to *deliver* drugs thus has committed the lesser-included, but distinct, offense of attempted delivery under § 39-12-101(a) (citing *State v. Pinegar*, No. M2015-02403-CCA-R3-CD, 2016 WL 6312036, at *15–16 (Tenn. Crim. App. Oct. 28, 2016))).

Because Mr. Davis' prior conviction is for an inchoate offense, falling under § 39-12-101(a) and § 39-17-417(a)(1), *Havis* would appear to annul his career-offender designation. *See United States v. Pallos*, 978 F.3d 373, 375 (6th Cir. 2020) ("*Havis* made clear that § 4B1.2's definition of 'controlled substance offenses' does not include attempt crimes[.]" (quotation omitted)); *United States v. Butler*, 812 F. App'x 311, 314 (6th Cir. 2020) ("Although the specific facts of *Havis* involved an attempt crime, its reasoning applies with equal force to other inchoate crimes not listed in the text of § 4B1.2(b)."); *Havis*, 929 F.3d at 320 (Sutton, J., concurring) (opining that "a person who attempts to deliver drugs under [§ 39-12-101(a)] has not committed a controlled substance offense because the guidelines' commentary cannot add attempted offenses to the definition").

But the fact that Mr. Davis is requesting relief under *Havis* here in a post-conviction setting rather than on direct appeal seriously complicates matters. The Sixth Circuit has stated that *Havis* applies to cases on direct appeal and not to cases in which a defendant's criminal judgment has become final. *See Bullard v. United States*, 937 F.3d 654, 657, 661 (6th Cir. 2019) ("[I]f the defendant received his sentence today, he would not be a career offender under the Guidelines. [The defendant] runs into a problem getting to the merits of his argument [under *Havis*]: he is not on direct review. . . . *Havis* provides no relief on collateral review. . . . [The

19

defendant] cannot use § 2255—or our decision in *Havis*—to attack collaterally his designation as career offender under the Sentencing Guidelines. Both are best left for direct review."); *see also Alexander v. United States*, No. 19-4005, 2020 WL 6111201, at *2 (6th Cir. June 30, 2020) ("[O]ur decision in *Havis* is not a new rule of constitutional law that the Supreme Court has made retroactive.").

Some district courts have therefore refused to view *Havis* as an extraordinary and compelling reason for compassionate release under § 3582(c)(1)(A). *See United States v. McKinnie*, No. 1:16CR304, 2020 WL 5087058, at *3 (S.D. Ohio Aug. 27, 2020) ("[T]he Court holds that the Sixth Circuit's recent decision in *United States v. Havis* . . . cannot serve as an 'extraordinary and compelling reason[]' under § 3582(c)(1)(A). . . . [T]he Sixth Circuit has previously determined that the same argument that Defendant advances cannot support relief on a collateral attack. It makes little sense therefore to allow Defendant to circumvent that decision by using a different statute to attack the length of his sentence." (citing *Bullard*, 937 F.3d at 657, 661))); *United States v. Greene*, No. 20-15709, 2020 WL 3118645, at *1 (E.D. Mich. June 11, 2020) ("The Sixth Circuit's decision[ ] in . . . *Havis* do[es] not fall within any of the limited circumstances where courts are empowered to modify a defendant's sentence under § 3582(c)." (footnote omitted)). This Court has found no cases in which the Sixth Circuit has applied *Havis* outside of a direct appeal, and FDS cites none.

So, ultimately, Mr. Davis' effort to tether his request for compassionate release to *Havis* is a plea to this Court's discretion under § 3582(c)(1)(A), not only because *Havis* has no binding effect in this post-conviction backdrop but also because the Court has license to deny Mr. Davis' request for compassionate release based on how the record was at the time of sentencing. *See Elias*, 984 F.3d at 518 ("[A] district court must engage in a 'three-step inquiry' . . . . If each of

those requirements are met, the district court 'may reduce the term of imprisonment,' but need not do so." (quoting 18 U.S.C. § 3582(c)(1)(A))); *see also United States v. Gaston*, ___ F. App'x ___, 2020 WL 6867187, at *2 (6th Cir. 2021) (rejecting the argument that district courts abuse their discretion by "assessing prisoners based on who they were at sentencing" and stating that district courts "act[] well within [their] discretion" by choosing to "consider the record from a defendant's initial sentencing when considering modifying his sentence"). The Court, in its discretion, will decline to hold that *Havis* is an extraordinary and compelling reason for Mr. Davis' release for three reasons.

First, as the Court has already said, *Havis* does not apply once a criminal judgment has become final, and the Court, by ruling differently, would arguably create precedent that runs crosswise with the Sixth Circuit's precedent—which the Court is simply unwilling to do, especially given FDS's failure to cite case law showing that *Havis* applies outside of a direct appeal. Second, FDS confines its argument under *Havis* to a single, conclusory sentence, with no legal analysis to back it. [Def.'s Reply. at 4]; *see McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)). And third, FDS raises *Havis* for the first time in a reply brief. *See Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived."). For these reasons, *Havis* does not constitute an extraordinary and compelling reason for Mr. Davis' compassionate release.

## B. The Third Requirement: Applicable Factors under § 3553(a)

Even if Mr. Davis had identified an extraordinary and compelling reason for his release under § 3582(c)(1)(A), he still would not be entitled to release because he has not shown that § 3553(a)'s factors weigh in favor of it. *See Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." (citations omitted)); *see also Sherwood*, 986 F.3d at 954 (stating that "[the defendant] must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today" (citation omitted)).[4]

The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010), so it has no obligation to readdress all of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *cf. United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)); *see Jones*, 980 F.3d at 1114 (stating that "[d]istrict courts should consider all *relevant* § 3553(a) factors before rendering a compassionate release decision" (emphasis added)

---

[4] Again, the Court exercises its discretion to skip an analysis under § 1B1.13 in favor of an analysis under § 3553(a). *See Jones*, 980 F.3d at 1108, 1111 (holding that § 1B 1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release" and stating that district courts, therefore, "may skip step two of the § 3582(c)(1)(A) inquiry"); *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020) ("The government . . . point[s] to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones* . . . . That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. (quoting 18 U.S.C. § 3553(a)(2)(C))).

(citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007))). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis is adequate. *Jones*, 980 F.3d at 1114 (quotation omitted).

In Mr. Davis' case, the relevant factors that the Court will address include § 3553(a)(1), (2), (4), and (6):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>> . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

18 U.S.C. § 3553(a)(1)–(2), (4), (6). As for the nature and circumstances of Ms. Davis' offense, he conspired to manufacture five grams or more of methamphetamine—a serious offense. *See United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000))). In addition, the Court has refamiliarized itself with Mr. Davis' presentence investigation report and his history and characteristics, and the Court is of the conviction that he would present a danger to the public if it were to order his release.

23

At sentencing, Mr. Davis' criminal history category was VI,[5] the highest possible category. His adult criminal history began at age eighteen, and he amassed twelve countable points for convictions that include aggravated assault, sale of a controlled substance, attempt to manufacture a controlled substance, evading arrest, possession of an immediate precursor chemical with intent to manufacture methamphetamine, and possession of methamphetamine. [PSR ¶¶ 34, 40, 42, 43, 46]. He also received two additional criminal history points under USSG § 4A1.1(d) because he committed the current offense—*i.e.*, a conspiracy to manufacture five grams or more of methamphetamine—while serving a state-court sentence. [*Id.* ¶ 48]. A sentence reduction therefore would not reflect the seriousness of Mr. Davis' offense and adequately protect the public from future crimes.

Mr. Davis, however, pushes back against the view that he presents a risk of harm to the public, citing a 2017 study from the United States Sentencing Commission: *The Effects of Aging on Recidivism Among Federal Offenders*, *available at* https://www.ussc.gov/research/ research-reports/effects-aging-recidivism-among-federal-offenders. [Def.'s Mot. at 8]. According to Mr. Davis, "the Sentencing Commission found that offenders aged 40 and above were less likely to be rearrested than those offenders 35-39 (Mr. Davis's age of arrest)," so he claims to be "at one of the lowest ends of the risk of recidivism" and "thus, a perfect candidate" for release. [*Id.*]. But Mr. Davis fails to account for his criminal history category—category VI. In the study that Mr. Davis cites, the Sentencing Commission found that defendants between the age of 40 and 49 with a criminal history category of VI had a re-arrest rate of 80.2%. U.S. Sent Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* app. at 44; *see* U.S. Sent. Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* 5 (2016) ("A federal offender's

---

[5] Incidentally, FDS acknowledges that even if the Court were to apply *Havis* to this case, Mr. Davis' criminal history category would still be VI. [Def.'s Reply at 3].

criminal history was closely correlated with recidivism rates. Rearrest rates range from 30.2 percent for offenders with zero total criminal history points to 80.1 percent of offenders in the highest Criminal History Category, VI."), *available at* https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview. And likely due to the directly proportional relationship between a defendant's criminal history category and rate of recidivism, the BOP, as recently as February 24, 2021, classified Mr. Davis as "high risk recidivism level." [BOP Inmate Profile, Doc. 737-1, at 2].

Next, the Court shifts its analysis to § 3553(a)(6) and notes that "courts have generally granted compassionate release only to defendants who have served a significant portion of their sentences." *United States v. Kincaid*, No. 3:10-CR-00160-1-TAV-HBG, at 13 (E.D. Tenn. Oct. 29, 2019) (citations omitted) (PACER), *aff'd*, 802 F. App'x 187 (6th Cir. 2020). According to the BOP, Mr. Davis, as of February 4, 2021, had served less than half of his sentence—43.1%, to be exact. [BOP Computation Data, Doc. 737-2, at 3]; *see* [United States' Resp. at 11 ("To date, Davis has served 98 months in custody, *i.e.*, less than half of that custodial term."). Because he has has served less than half of his sentence, his release would result in a substantial reduction in his sentence. *See Kincaid*, 802 F. App'x at 188 ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

A substantial reduction in Mr. Davis' sentence simply would not reflect the seriousness of his offense, promote respect for the law or afford adequate deterrence, or adequately protect the public from future crimes. 18 U.S.C. § 3553(a)(2). If the Court were to grant a substantial reduction in his sentence by ordering his release, it would also risk creating "unwarranted

sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6); *see Ruffin*, 978 F.3d at 1008 (affirming the district court's denial of an inmate's request for compassionate release when he "ha[d] yet to serve even half of his 25-year sentence"). And also worth noting: though Mr. Davis' guidelines range was 262 to 327 months, the Court departed downward from the bottom of the guidelines range by thirty-four months. [Statement of Reasons at 2]; *cf. Ruffin*, 978 F.3d at 1008 (noting that "the court had already varied downward by five years from [the defendant's] guidelines range when imposing that lengthy sentence").

Lastly, the Court would be remiss if it did not consider COVID-19's impact on FPC Butner Medium II—a consideration that is relevant to § 3553(a)(2)(D). *Jones*, 980 F.3d at 1115. FCI Butner Medium II currently has 20 active cases of COVID-19 among its inmates—a larger number of cases than most federal facilities currently have. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Mar. 3, 2021). Still, § 3553(a)(2)(D) is but one factor that the Court must weigh under § 3553(a), and all the other relevant factors weigh against compassionate release. And, importantly, because Ms. Davis does not have an underlying condition that places him at a heightened risk of severe illness from COVID-19, the Court is unwilling to apportion greater weight to § 3553(a)(2)(D)—or, more specifically, to the number of infections at FCI Butner Medium II. *See United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) ("A district court *may* place great weight on one factor if such weight is warranted under the facts of the case." (emphasis added) (citation omitted)); *see also United States v. Richardson*, 960 F.3d 761, 765 (6th Cir. 2020) ("[H]ow much weight a judge gives to any § 3553(a) factor is 'a matter of reasoned discretion' to which we owe 'highly deferential review.'" (quotation and citation omitted)).

Before concluding its analysis, the Court must address one more point: Mr. Davis' post-conviction record, which Mr. Davis highlights throughout his motion. Mr. Davis has no post-conviction disciplinary infractions. While incarcerated, he has used his time to his advantage, having completed numerous programs and classes. [Certificates of Completion, Doc. 748-1, at 4–14]. He has been baptized, [*id.* at 8], and professes to have "lived a healthy Christian lifestyle every [day] since that day," [Def.'s Mot. at 2]. All of this is to Mr. Davis' credit, and the Court applauds his efforts and accomplishments—they will serve him well in the future. But good behavior is expected of federal inmates. *See United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("These admirable efforts will likely serve [the defendant] both now and well after his term of incarceration ends. But good behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and compelling circumstances' that warrant a sentence reduction."); *cf. United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005) (stating that a defendant's re-assimilation into pre-incarceration life is "commendable," but it is "expected of a person on supervised release and do[es] not constitute the 'exceptional behavior' contemplated in the precedents").

And as Mr. Davis acknowledges in his motion, rehabilitation alone cannot justify his release under § 3582(c)(1)(A). *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *Ruffin*, 978 F.3d at 1009 ("Congress has made clear that rehabilitation 'alone' does not provide a proper basis for relief. All told, then, the court reasonably concluded that [the defendant's] rehabilitation efforts, when considered alongside the other § 3553(a) factors, did not warrant any greater reduction of his already below-guidelines sentence. (citing 28 U.S.C. § 994(t))). Because the applicable factors that the Court has analyzed under § 3553(a) work against Mr. Davis' release, Mr. Davis'

27

rehabilitative efforts alone cannot act as a ballast that outweighs those factors. *See Gaston*, ___ F. App'x ___, 2020 WL 6867187 at *2 ("[The defendant] points to no evidence other than his rehabilitation that might favor relief. Therefore, *Ruffin* forecloses remand on this argument."). In sum, Mr. Davis fails to demonstrate that § 3553(a)'s factors favor his release.

### III.  CONCLUSION

The Court sympathizes with Mr. Davis' concerns, but he is not entitled to compassionate release under § 3582(c)(1)(A) because he has not identified an extraordinary and compelling reason for his release and the relevant factors under § 3553(a) militate against his release. His Motion for Compassionate Release under 28 U.S.C. § 3582(c)(1)(A) [Doc. 735] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
